IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

RONNELL OLIVER                                                PLAINTIFF

v.                                            CAUSE NO. 1:12CV276-LG-JMR

AIG LIFE INSURANCE COMPANY, ET AL.                          DEFENDANTS

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT are cross-motions for summary judgment filed by the

plaintiff, Ronnell Oliver, and the sole remaining defendant, AIG Life Insurance

Company.  Oliver alleges that AIG improperly denied his claim for payment of

disability benefits due to him under the terms of his ERISA plan, and seeks

recovery of those benefits pursuant to 29 U.S.C. § 1132(a)(1)(B).  Oliver further

seeks injunctive relief pursuant to 29 U.S.C. § 1132(a)(3) in the form of an order

requiring AIG to reform the plan documents regarding exhaustion of administrative

remedies and a fuller explanation of the administrative exhaustion requirement.

The issues have been fully briefed.  The Court finds that AIG did not improperly

deny benefits, and Oliver failed to show the injunctive relief would be appropriate

in this case.  Accordingly, AIG is entitled to summary judgment, but Oliver is not.

His claims will be dismissed.

BACKGROUND

Oliver was a participant in his employer's ERISA plan at the time he alleges

he became totally disabled.  In September 2008, while clipping the toenails on his

left foot, he accidentally cut a toe, resulting in an infection.  The infection worsened

and tip of his left great toe developed gangrene.  The gangrenous toe was amputated in May 2009.  Unfortunately, one week later, Oliver's left leg below the knee was amputated.  Oliver applied for both Accidental Dismemberment benefits and Permanent Total Disability benefits, alleging inability to perform his occupation as of September 7, 2008.  Both categories of benefits were denied because the plan administrator determined that under the circumstances, the amputation was not a covered loss.  Oliver's appeal was denied.  This lawsuit followed.

### The Claim

Oliver submitted his claim to AIG for accidental permanent total disability benefits in early 2010.  Claims administrator Chartis forwarded Oliver's information to Dr. Tatiana Sharahy, M.D., for an Independent Medical Peer Review.  Dr. Sharahy concluded from Oliver's medical records that he had a history of long-standing diabetes mellitus requiring insulin therapy, diabetic neuropathy, hypertension, and hypercholesterolemia.  She was asked whether, "based on the noted medical history and medical findings, was the need for amputation the result of sickness, disease or infection of any kind; except bacterial infections due to an accidental cut or wound, botulism or ptomaine poisoning?"  (Pl. Mot. Summ. J. Ex. A Pt. 2 AGLife 00000170, ECF No. 33-2).  She answered that "it appears that claimant's left leg amputation was the result of the local trauma to the left great toe (claimant stated he cut the nail back) and its complications, as well as poorly controlled long-standing diabetes and peripheral vascular disease."  (*Id*.).

Chartis reviewed Dr. Sharahy's report and the medical records, and concluded that Oliver did not sustain an "Injury" as defined by the policy.   It notified Oliver that it was denying his claim because "the event leading up to your left below the knee amputation was not independent of all other causes.  Also, [ ] the left below the knee amputation was caused in whole or in part by sickness, disease or infection, which did not directly occur due to an accidental cut or wound." (Pl. Mot. Summ. J. Ex. A Pt. 2 AGLife 00000172-73, ECF No. 33-2).  Chartis informed Oliver that,

> while the reviewed medical records do indicate a complaint of an incident while clipping your left first toe nail back, the records also indicate that the proximate cause of the left below the knee amputation was directly contributed to by the noted left foot neuropathy, uncontrolled diabetes, and peripheral vascular disease affecting the lower extremities.

(*Id*. at AGLife 00000172).  Additionally, Chartis set out the policy provisions it considered in making its determination:

> Injury – means bodily injury caused by an accident occurring while this Policy is in force as to the person whose injury is the basis of the claim and resulting directly and independently of all other causes in a covered loss.

> Exclusions – This Policy does not cover any loss caused in whole or in part by, or resulting in part from, the following:

>> (2) Sickness, disease or infections of any kind; except bacterial infections due to an accidental cut or wound, botulism, or ptomaine poisoning.

> In regards to Permanent Total Disability the Policy provides the following:

>> . . .  If, as a result of an Injury, the Insured is rendered Permanently Totally Disabled within 365 days of the accident that caused the Injury, the

Company will pay 100% of the Principal Sum at the end of 12 consecutive months of such Permanent Total Disability. . . .

(*Id*.).

**The Appeal**

Oliver advised Chartis that he wished to appeal its decision denying benefits. He argued that the loss of his leg was caused by the accidental injury of cutting his toe while trimming his toenail; the gangrene necrosis was caused by infection of the cut.  Chartis forwarded additional medical records and other documents to Dr. Sharahy for review and supplementation of her initial report.  (Pl. Mot. Summ. J. Ex. A Pt. 3 AGLife 00000285, 00000300, Ex. B Pt. 1 AGLife 00000301-03, ECF No. 33-3, 33-4).  Dr. Sharahy advised Chartis that Oliver's leg amputation was directly the result of gangrene of his toe.  She stated the medical records showed that Oliver had dry gangrene, which develops slowly and most commonly in people who have a blood vessel disease.  She concluded that Oliver's gangrene was mainly due to peripheral vascular disease, not a bacterial infection.  "The final pathologic diagnosis of gangrenous necrosis and severe calcific atherosclerosis also confirmed a vascular, as opposed to a bacterial, cause."  (Pl. Mot. Summ. J. Ex. B Pt. 1 AGLife 00000302-03, ECF No. 33-4).  Dr. Sharahy's report was provided to Oliver prior to its consideration by the appeals committee.  (*Id*. at AGLife 00000336).  The appeals committee denied the claim essentially on the basis of Dr. Sharahy's opinion regarding the type of gangrene affecting Oliver's toe.  (Pl. Mot. Summ. J. Ex. C 1-3, ECF No. 33-6).

DISCUSSION

Oliver's grounds for summary judgment on his claim for denial of benefits are straightforward - he argues he has met the definition of "Injury" under the policy. The familiar standard for the entry of summary judgment under Federal Rule of Civil Procedure 56(a) requires its entry "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is appropriate "against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party "bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).

### 1. Denial of Benefits

In making a benefit determination, a plan administrator performs two tasks. *Chacko v. Sabre, Inc.*, 473 F.3d 604, 609-10 (5th Cir. 2006). The administrator must determine the facts underlying the benefit claim. These factual determinations are reviewed for abuse of discretion, with "due deference [to the extent they] reflect a reasonable and impartial judgment." *Pierre v. Conn. Gen. Life Ins. Co.,* 932 F.2d 1552, 1563 (5th Cir. 1991). The administrator must then "determine whether those facts constitute a claim to be honored under the terms of

the plan." *Schadler v. Anthem Life Ins. Co.,* 147 F.3d 388, 394 (5th Cir. 1998). This

step generally involves a determination of eligibility, *see Wildbur v. ARCO Chem.*

*Co.,* 974 F.2d 631, 636 (5th Cir. 1992), and may include construction of the terms of

the plan. *See Chacko,* 473 F.3d at 611. If the plan grants discretion to the

administrator to determine eligibility for benefits or to construe the terms of the

plan, then the administrator's decision is given deference on judicial review and

only overturned if the decision was an abuse of discretion. *Firestone Tire & Rubber*

*Co. v. Bruch*, 489 U.S. 101, 111-12 (1989); *Anderson v. Cytec Indus., Inc*, 619 F.3d

505, 512 (5th Cir. 2010). If the administrator lacks discretionary authority, then

review of the eligibility determination is de novo. *Firestone*, 489 U.S. at 115.

Discretionary authority cannot be implied; an administrator has no discretion to

determine eligibility or interpret the plan unless the plan language expressly

confers such authority on the administrator. *Wildbur v. ARCO Chem. Co.*, 974 F.2d

631, 636 (5th Cir. 1992) (citing *Cathey v. Dow Chem. Co. Med. Care Program,* 907

F.2d 554, 558 (5th Cir.1990), *cert. denied,* 498 U.S. 1087 (1991)).

The parties dispute whether the plan gave AIG discretionary authority to

determine eligibility for benefits or interpret the terms of the policy. Oliver argues

that the policy at issue contains no language delegating discretionary authority to

the administrator or to AIG. AIG agrees that "[t]he Policy language here

admittedly doesn't contain the 'magic language' that Plaintiff would like it to

contain." (AIG Rebuttal in Support of Mot. Summ. J. 5, ECF No. 41). Nevertheless,

AIG argues that the plan administrator's discretion is articulated throughout the policy.[1]

The Court finds that an analysis of the parties' arguments is unnecessary, because this case turns on a *factual determination* made by the plan administrator, and therefore the abuse-of-discretion standard applies. "[F]or factual determinations under ERISA plans, the abuse-of-discretion standard of review is the appropriate standard." *Pierre v. Connecticut General Life Ins. Co.,* 932 F.2d 1552, 1562 (5th Cir. 1991) (noting that "federal courts owe due deference to an administrator's factual conclusions that reflect a reasonable and impartial judgment."); *Rutledge v. Am. Gen. Life & Acc. Ins. Co.*, 871 F. Supp. 272, 275 (N.D. Miss. 1994). The key determination in this case is whether there was an accidental cause of Oliver's injury. In other words, whether the accidental nail clipping cut caused the gangrene that resulted in the amputation of the left leg or instead, whether the gangrenous condition was a caused by peripheral vascular disease. Whether a particular injury was accidental is a question of fact. *Pierre*, 932 F.2d at 1559. Likewise, the cause of an injury is a question of fact. *See Dutka ex rel. Estate of T.M. v. AIG Life Ins. Co.*, 573 F.3d 210, 213 (5th Cir. 2009) (determination that

---

[1] Both parties discuss the language in the Summary Plan Description unequivocally granting AIG discretionary authority, which the Court has located within Exhibit C to Plaintiff's Motion for Summary Judgment (ECF No. 33-6). This language should be disregarded in regard to Oliver's denial of benefits claim. Statements in a plan summary do not constitute the terms of the plan for purposes of 29 U.S.C. § 1132(a)(1)(B), and the Court cannot reform the plan based on the language of a summary. *CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1878 (2011).

crash was caused in part by the decedent's intoxication a factual determination

subject to abuse of discretion standard): *see also S. Farm Bureau Life Ins. Co. v.*

*Moore*, 993 F.2d 98 (5th Cir. 1993). Here the plan administrator denied the claims

because it determined that Oliver's below the knee amputation was not related to a

cut around his toenail. As Dr. Sharahy stated, the medical records showed that

Oliver's gangrene was not "wet," and therefore not bacterial. In her opinion,

Oliver's gangrene was *caused* by his underlying vascular condition, which had been

manifest for years. Oliver argues that "[d]iabetics are certainly more prone to

infections and gangrene. However, apart from an injury, such infections may never

occur." (Pl. Memo. in Support of Mot. Summ. J. 19, 20, ECF No. 34). Dr. Sharahy's

explanation of gangrene establishes that this is not necessarily so, that gangrene

may result from vascular disease. The plan administrator's factual determination

that Oliver's amputation was necessary because of his underlying vascular

condition and not because of an infection caused by his accidental over-clipping was

reasonable and supported by substantial evidence in the record. The Court

therefore finds that AIG acted reasonably in denying accidental injury benefits

under the policy and that Oliver is not entitled to benefits.

### 2. Injunctive Relief

In his request for injunctive relief, Oliver contends that the plan summary

contains incomplete information in one instance and a conflict between the

summary and the plan in another instance. Oliver requests that AIG be required to

reform the plan documents to correct these items and notify plan participants of the

changes.  He cites as authority for this request the U.S. Supreme Court's discussion

in *CIGNA Corp. v. Amara*, *supra*, n.1, regarding "other appropriate equitable relief"

for ERISA violations.[2]  However, Oliver has not alleged any ERISA violations.  His

request for injunctive relief has no underlying claim of wrongdoing, such as breach

of fiduciary duty or misrepresentation.  The provisions he cites are not even at issue

in his denial of benefits claim.

In the first instance, he notes that the 2008, 2009 and 2010 Summary Plan

Descriptions (or "SPD's) state that a legal action must be brought within six months

of a final decision, while the policy itself states that an action must be brought no

earlier than 60 days and no later than three years after the written proof of loss.

He asserts these provisions contradict each other.  The Court discerns no direct

conflict.  The two limitation periods could be expected to work together, to give AIG

time to act on the written proof of loss, limit the time for filing suit after the final

decision, and provide an overall limit on the time for filing suit in the event a

written proof of loss was filed but no final decision reached.

In the second instance, Oliver has identified an incomplete statement of the

---

[2] In *Amara,* the U.S. Supreme Court was faced with a change in the nature of the pension plan provided to CIGNA's employees. *Amara,* 131 S.Ct. at 1870.  The Court determined that CIGNA's description of the new plan was misleading and caused many employees to be worse off.  *Id.* at 1873.  Although the plan could not be reformed under 29 U.S.C. § 1132(a)(1)(B), the Court found that reformation of the plan and payment of benefits due under the reformed plan was "other appropriate equitable relief" under 29 U.S.C. § 1132(a)(3).  None of those issues are present in this case.

law in the 2009, 2010 and 2012 SPD's. They state that full exhaustion of administrative remedies is necessary before bringing a legal action, without explaining that claims of breach of fiduciary duty or statutory violations do not require exhaustion. A summary plan description does not need to be all-inclusive; it need only be "sufficiently accurate and comprehensive to reasonably apprise [ ] participants and beneficiaries of their rights and obligations under the plan." *Foster v. PPG Indus., Inc.*, 693 F.3d 1226, 1238 (10th Cir. 2012) (citations omitted); 29 U.S.C. § 1022. Explaining the full extent of the law concerning enforcement of ERISA is beyond the purpose of the plan summary.

Further, Oliver's allegation does not describe a conflict between the plan summary and the terms of the plan. "[W]ithout a conflict between the SPD and the plan, there is no path to [ ] equitable relief." *Pearce v. Chrysler Group LLC Pension Plan*, No. 10-14720, 2013 WL 5178478, *9 (E.D. Mich. Sept. 12, 2013) (citing *Liss v. Fid. Emp'r Servs. Co.,* No. 11-2124, 516 F. App'x 468, *6 (6th Cir. 2013); *Bidwell v. Univ. Med. Ctr., Inc.,* 685 F.3d 613, 620 n. 2 (6th Cir. 2012) (because there does not appear to be any actual conflict between the summary plan description and the plan, "we need not consider the applicability ... of *Amara.");* *McCorkle v. Bank of Am. Corp.,* 688 F.3d 164, 177 (4th Cir. 2012) (court did not address *Amara* because there was no conflict between the summary plan description and the plan); *Foster v. PPG Indust., Inc.,* 693 F.3d 1226, 1235 n. 5 (10th Cir. 2012) (rejected *Amara* where procedures laid out in the summary plan description did not contradict the plan)). Oliver has not shown that he is entitled to injunctive relief.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion [32]

for Summary Judgment filed by defendant AIG Life Insurance Company is

**GRANTED** and the Motion [33] for Summary Judgment filed by plaintiff Ronnell

Oliver is **DENIED**.   Plaintiff's claims are **DISMISSED**.

**SO ORDERED AND ADJUDGED** this the 16th day of January, 2014.


s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE